### In re GOULD SECURITIES, LITIGATION.

### No. 86 C 3598.

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1989.

---

Robert D. Allison, Chicago, Ill., Jules Brody, Stull Stull & Brody, Joseph H. Weiss, Robert M. Kornreich, Wofl Popper Ross Wolf & Jones, New York City, Clifford J. Shapiro, Sachnoff Weaver Rubenstein, Chicago, Ill., for plaintiff.

Kurt L. Schultz, George Lombardi, Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The parties have settled this securities fraud class action. On August 30, 1989, we entered an interim award of attorneys' fees to class counsel. That award was based on figures about which there was no dispute. We now consider the disputed claims for fees and make a final award. There being nor dispute, and based on our own review, we also award all of the expenses claimed in the petition. We further consider, and reject, the claims of the class representatives for incentive awards for having undertaken the litigation of this suit.

### I. *Attorney's Fees*

Under the "common-fund doctrine," a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole, rather than from only the named plaintiff's por-

tion of that fund. This doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).

■ In considering a petition for attorneys' fees, this Court must act as "fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir.1988). Class counsel have submitted detailed petitions seeking an award of fees based on the lodestar/multiplier method of calculating awards. The lodestar/multiplier method, as it is now applied, requires a calculation of the number of hours reasonably expended by counsel, taking into account factors such as the complexity of the lawsuit and tasks performed. That number is then multiplied by the reasonable hourly rates for such services to arrive at the "lodestar" figure. Factors such as issue novelty and quality and type of work are included in determining the hourly rates to be awarded. The lodestar figure is then increased by a multiple that is based on the risk or contingency borne by counsel at the time the litigation was undertaken. *Id.* at 258.

The defendants do not object to the selection of the lodestar/multiplier method of calculating the attorneys' fees award in this case. Rather, the defendants have raised several objections to specific applications of the method and ask us to disallow certain portions of the petition for fees and expenses. In addition, one class attorney has objected to co-lead counsels' petition for a higher multiplier for themselves than for other class counsel. We further note that no class member has objected to either the settlement or the petition fees and expenses.

We will first consider the reasonableness of the lodestar calculations submitted by the petitioners. Then we will address the appropriateness of the multipliers requested.

### A. Lodestar Calculations

#### 1. Number of hours

The eleven law firms representing the plaintiff class expended 6,264.88 attorney hours and 2,078.73 paralegal hours in prosecuting this litigation. Each firm has submitted affidavits showing the services performed by each attorney or paralegal who worked on the case and the expenses incurred. Daily time records were made available for inspection by counsel for the defendants.

Based on the quality of their response to this petition for fees, it is apparent that counsel for the defendants performed an exhaustive and detailed review of the petition. That response prompted additional submissions from various firms for the plaintiff class, in which counsel clarified and further substantiated their claim for fees. As a result, for the most part, any discrepancies regarding hours have been resolved. Given the complexity of the litigation and the vigorous yet efficient manner by which talented class counsel pursued this matter, we believe that, on the whole, the hours expended were reasonable. There remain only a few minor objections to particular hours which we will briefly address.

■ The defendants have objected to 68.4 hours of time spent by Wolf, Haldenstein, Adler, Freeman & Herz as overhead charges which are unreasonable and not properly chargeable to the Settlement Fund. In response, the firm has made clear that 23 hours of that time was spent by paralegals performing legitimate tasks primarily related to the organization of discovery documents and research materials for attorney use. The firm has also clarified that the additional 45.4 hours of contested time, recorded as "time reports" and "time sheets," were spent for non-routine monthly recording and reporting of time and expenses to lead counsel. The firm claims that the recording process was employed to ensure compliance with an order of this Court so that lead counsel could

properly control waste and duplication and monitor work in progress. Based on these representations we are satisfied that the hours were properly chargeable to the Settlement Fund.

Defendants next object to certain hours billed by Kaufman, Malchman, Kaufman & Kirby. At issue are 43.50 hours billed as time spent preparing a document request to a third-party witness at Ernst & Whinney, and 48.75 hours spent on miscellaneous activities such as inter-office conferences, reading articles, "setting up a time report system" and "checking re: financial contributions." Whether the 43.50 hours spent on the document request is excessive depends principally on the detail required in preparing the request, the length of the request, time spent following up on the request and any time spent working on the product of the request. The defendants have provided us with no information from their review of the files supporting the fee application that might suggest that these hours were excessive. Nor do we believe that 43.50 hours is clearly manifestly excessive. The same considerations apply to the 48.75 hours of miscellaneous billings. Defendants have asked us to reduce these hours by 50%, yet have made no effective challenge that this hourly total for the miscellaneous billings is inflated or unreasonable. We do not believe that trimming these hours is warranted.

The defendants also recommend that we reduce the number of hours billed by Stull, Stull & Brody relating to the preparation for and taking of a two-day deposition of a representative from Ernst & Whinney. The defendants claim that these hours were excessive and unnecessary because they were incurred after the parties had agreed in principle to release Ernst & Whinney. The petition for fees, however, explains that after the "handshake" agreement to settle the case, class counsel decided that depositions should be taken of Ernst & Whinney Manager, James Powell, Gould's former CEO and president, James McDonald, and the chairman of its board of directors' audit committee, David Donahue, to "make doubly sure counsel's assessment of the case was correct and that the settle-ment was reasonable." (Pet. at 15–16). The defendants have not challenged that the taking of these depositions was an unreasonable attempt to inflate billings. Rather, the defendants claim that Stull, Stull & Brody's petition demonstrates no attempt to "exclude from a fee request hours that are excessive, redundant or otherwise unnecessary just as a lawyer in private practice is ethically obligated to exclude such hours from his fee petition." See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). We cannot discern what more the defendants would have Stull, Stull & Brody do in their petition to show that they abided by that standard other than the firm's pledge that they have petitioned for reasonable hours. And we cannot conclude that 212 hours was manifestly unreasonable. Class counsel intended the two-day deposition to be the last effort to ensure the reasonableness of the settlement. It is clear that the deposition would touch upon key aspects of over two years of extensive discovery that preceded it. There is every indication, therefore, that preparation for the deposition was most likely broad in scope and complexity. The defendants have provided no grounds upon which we might conclude otherwise. Therefore, we will not reduce the petition for these hours.

Furthermore, we will not reduce the hours claimed by Stull, Stull & Brody related to 29 hours of Brian Barry's work on documents following the document production. Defendants attach some significance to the fact that the work on the documents took place after the production had concluded. Clearly, however, work spent on documents typically follows a document production, and we find no reason to believe that such work was not required in this case. Indeed, Stull, Stull & Brody has made clear that such work included preparation of a document digest which was submitted to co-lead counsel. (Class Counsel's Resp., Ex. 4). We also reject the defendants' recommendation that we reduce the 108 hours claimed by Stull, Stull & Brody for a lawyer and a paralegal to digest 546 pages of the plaintiff's own dep-

ositions. We believe that Stull, Stull & Brody adequately explained the amount of work that went into the thorough preparation of a 40–page, typed digest of these depositions.

Finally, we partially reject defendants' claim that there is a discrepancy in dates regarding time billed by Brian Berry: 36.50 hours are credited to Berry for attending a document production from March 2, 1987 through March 6, 1987; 18.50 hours are also credited to Barry for "reviewing docs" on March 4, 1987 and March 6, 1987. In part, this objection is implicitly based on the argument that the 55 hours billed in total during this five-day period appears manifestly excessive. We will refrain from deciding that point, since it is evident that there is a further discrepancy between Barry's time record and the 55 hours claimed. To resolve this, we will allow the hours actually recorded by Barry during the week of March 2, 1987, as reflected in Barry's time sheet attached as Exhibit C to Stull, Stull & Brody's supplemental affidavit. (Class Counsel's Resp., Ex. 4). Those hours totalled 46.50.[1] Therefore, we will reduce Stull, Stull & Brody's lodestar hours by 8.50 hours.

The remaining objection to hours claimed is one which we raise, *sua sponte*, in our role as fiduciary for the class. In affidavits dated June 30, 1988, and July 5, 1989, Robert Allison claimed a total of 319.7 hours. Of those hours, Allison claimed that he was responsible for 111.34 hours and that his associate Mark Singer was responsible for 208.44 hours. On July 18, 1989, however, Allison submitted a supplemental affidavit, claiming the same total of 319.7 hours billed, but this time showing 48.8 hours billed by Allison and 270.68 hours billed by Singer, for a total of 319.48 hours. The difference in the total number of hours claimed may be slight, but the discrepancy regarding how many hours

were billed by each attorney warrants an explanation from Allison. Accordingly, we order Allison to submit his time sheets and those of his associate to the Court within 7 days so that we may determine the appropriate number of hours billed.

## 2. *Reasonableness of Hourly Rates*

Defendants have raised no objection to the hourly rates submitted by co-lead counsel. We find that these rates reasonably reflect both the level of service which these two fine firms provided the class in their roles as lead counsel and the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Lightfoot v. Walker*, 826 F.2d 516, 524 (7th Cir.1987).

■ However, the defendants have generally objected to non-lead counsel receiving compensation at a rate higher than that awarded to lead counsel. We find merit to that contention. We do not believe that the attorneys who played a less significant role in this litigation should receive a rate of compensation higher than the highest rate we award to Chicago counsel, lead or otherwise.

Accordingly, as the benchmark for partners whose hourly rates are $285.00 or more, we will use the hourly rate of $285.00 which reflects the rate awarded to Michael J. Freed of Much, Shelist, Freed, Denenberg, Ament & Eiger.[2] Regarding partners whose hourly rate is less than $285.00, we will award the hourly rate of $220.00, as reflected by the rate awarded to Jack L. Block of Sachnoff & Weaver. We agree with the defendants that $150.00 should represent the maximum hourly rate for services performed by associates, based on the rate allowed for Lucy Karl of Sachnoff & Weaver, who was extensively involved in the case and has the highest hourly rate of any associate listed in that

---

1. The time sheet reflects a total of 49.50 hours. The daily log on the sheet, however, does not account for three of those hours. In fact, 46.50 appears to have been written in as the original total and then corrected to read 49.50. We will therefore only allow the hours for which there is a precise record.

2. We have not chosen Lowell E. Sachnoff's hourly rate of $325 as the benchmark for this group of partners. Sachnoff's rate is already in line with the rates billed by co-lead counsel in New York, and his higher rate also represents an exceptional figure reasonably commensurate with his primary role in this litigation.

firm's fee petition. Finally, the hourly rate of $75.00 allowed for Judith A. Feerer, a Sachnoff & Weaver paralegal, serves as a reasonable benchmark for the high end of paralegal hourly rates. Based on our conclusion regarding these rates, we need not address the defendants' specific objections to the hourly rates requested by various New York firms.[3] These adjusted lodestar rates are reflected in the appendix to this opinion.

### B. The Reasonableness of the Multipliers

■ The petition for fees requests that we apply a multiplier of 1.9 to the lodestar figures for co-lead counsel and a multiplier of 1.3 to the lodestar figures for non-lead counsel. Co-lead counsel are seeking a higher multiplier than that recommended for non-lead counsel because of the disproportionate share of the risk, work and expense borne by co-lead counsel. We note at the outset that we believe that a multiplier is necessary and appropriate in this case. Plaintiff's counsel knew that their fees in this case were subject to achieving a favorable result, and there is ample support that they would not have taken this case if they had not believed they would receive a multiple on their time, and that the plaintiffs would have had substantial difficulties in finding other counsel on a non-contingency basis. Having concluded that a multiplier is appropriate, we must address three issues regarding the multiplier. First, one of the petitioners has objected to any differentiation between lead counsel and non-lead counsel when assigning a multiplier to the lodestar figures. Second, we must consider the reasonableness of the requested multiplier values. Third, defendants have argued that the assignment of a multiplier should be limited only to those fees incurred prior to an agreement in principle to settle the action.

■ Before determining the appropriate multiplier to apply in this case, we must first consider the objection of Robert D. Allison to the petition for different multipliers for lead and non-lead counsel. Allison is one of the non-lead class attorneys for whose time the petition has requested a 1.3 multiplier. For lead counsel's time, the petition seeks a 1.9 multiplier. Allison contends that such differentials are unfair because co-lead counsels' larger share of the work and abilities are reflected in their firms' lodestars and hourly rates. Further, Allison argues that the greater risk of lead counsel arising from the workload they have assigned themselves is compensated for by the greater reward reflected in their lodestar.

In support of their claim for an enhanced multiplier, lead counsel cite several cases from this district which selected varying multipliers depending upon counsel's role in the litigation and other factors. *In re Cenco Inc. Sec. Litig.*, 519 F.Supp. 322, 327 (N.D.Ill.1981) (multiplier ranging from 2 to 4); *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D.Ill.1979) (multipliers ranging from 1.3 to 3); *Arenson v. Board of Trade*, 372 F.Supp. 1349 (N.D.Ill.1974) (multipliers of 3 and 4). Lead counsel argue that where, as here, the amount of work done and risk undertaken by lead counsel is disproportionately high, and the results in the litigation are largely attributable to lead counsel's efforts, it would be unfair to award them the same multiple as those who did not play any appreciable role in the management of the litigation. We agree with lead counsel.

The record in this case reflects that lead counsels' investment in time and effort, represented by their lodestars, was more than 50% greater than the lodestars of the nine other firms combined. Lead counsel also assumed an even greater percentage of the expenses in this litigation, though the relative totals are not as significant as the lodestar figures. A large part of the additional amount of work and expense as-

---

**3.** In reaching this result, we also need not address a somewhat broader question. Legal fees are determined by the market place of the geographic community of which the law firm is a part. New York legal fees are higher than those of Chicago—or anywhere else for that matter.

The question we leave for another case is whether a Chicago court in a Chicago-based case should—in the exercise of its fiduciary obligations to the fund's beneficiaries—use as a standard of reasonableness, the New York or Chicago marketplace.

sumed by lead counsel resulted from carrying out their duties under Pretrial order No. 1, and they should be compensated for shouldering that burden and placing those resources at risk. We find that an enhancement to the multiplier is the best way to factor in and to preserve the incentive for counsel to act as lead counsel in complex cases such as this, and consequently to bear the risk of losing a significantly greater stake in time and effort and expense.

■ We do not believe, however, that the differential between the multipliers for lead and non-lead counsel should be as great as those applied by the courts in the cases cited by lead counsel. The differentials in those cases ranged from 1 to 2 and accounted not only for the added investment that lead counsel placed at risk, but also for other factors such as skill and ingenuity of counsel, and the quality of work performed by counsel. Those factors, as we have noted, now figure into the lodestar calculation. Thus, we find that the petitioned for differential of 0.6 (1.9–1.3) sought by counsel in this case properly reflects these changes in the lodestar/multiplier analysis. We believe, however, that the differential sought is toward the high end of what should be the reasonable range for lead/non-lead differentials. Therefore, we will adjust the differential downward slightly to 0.5.

■ Further, we believe, that the multipliers of 1.9 and 1.3 are slightly excessive. In *Skelton*, the Seventh Circuit noted that the task of assessing the riskiness of litigation is not without its problems:

First, it entails a retroactive calculation of the probability of success as measured at the beginning of litigation. Second, it places plaintiff's lawyers in the unseemly position of convincing the court that their clients' case was weak. For those reasons (and others) it has been suggested that a standard risk multiplier be used in all contingent fee arrangements.

860 F.2d at 258. Despite the problems related to the subjectiveness inherent in the determination of a multiplier, the Seventh Circuit concluded that the district courts, "familiar ... with the nature of the litigation, should retain discretion to decide if and to what extent the plaintiffs' counsel should be compensated for risk." *Id.* The court suggested without deciding, that a doubling of the lodestar would provide a sensible ceiling.[4]

We find that multipliers of 1.75 for lead counsel and 1.25 for non-lead counsel reasonably reflect the contingent nature of this litigation. This case required a substantial investment of time and expense to unravel an enormously complex factual scenario which served as the basis for the plaintiffs' claim. The requirements of proof that plaintiffs had to meet were quite substantial, since the plaintiffs would have had to rely on often subtle analyses of a complicated history of management and accounting, absent direct relevant evidence of hard core fraud. There were also several complex issues as to damages that the plaintiffs would have had to overcome. Therefore, the risk incurred at the outset was not insubstantial. Nevertheless, the risk was not so great as to warrant a multiplier for lead counsel that nearly

**4.** In *Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), Justice White, writing for the plurality, suggested a more restrictive view of the appropriate ceiling for multipliers. He concluded, in the context of a citizen's action brought under the Clean Air Act, that doubling the lodestar for certain phases of the work was excessive. *Id.* 107 S.Ct. at 3089. Alluding to the uncertainties involved in determining the risk of not prevailing and the burdensome nature of fee litigation, Justice White stated

We deem it desirable and an appropriate application of the statute to hold that if the trial court specifically finds there was a real risk of

not prevailing issue [sic] in the case, an upward adjustment of the lodestar may be made, but, as a general rule, in an amount no more than ⅓ of the lodestar. Any additional adjustment would require the most exacting justification. This limitation will at once protect against windfalls for attorneys and act as some deterrence against bringing suits in which the attorney believes there is less than a 50–50 chance of prevailing. Risky suits may be brought, and if won, a reasonable lodestar may be awarded, but risk enhancement will be limited to ⅓ of the lodestar, if awarded at all.

*Id.* at 3089.

touches upon the Seventh Circuit's suggested ceiling.

■ Finally, the defendants have objected to that portion of the petition for fees which seeks the application of the multiplier to attorneys' fees incurred after January 19, 1989. January 19, 1989, is the date when counsel for both the defendants and the plaintiffs met in our chambers and agreed in principle to settle this case. The defendants argue that since the multiplier is meant to account only for contingency, and since risk was virtually non-existent in the post-January 19, 1989 period, then there is no reason to apply a multiplier to the post-January 19, 1989 hours.

Class counsel maintain, however, that risk remained after the agreement in principle to settle. They argue that the settlement could have fallen apart over several issues during the period. They further cite to several cases in which courts have awarded a risk enhancement for time spent in concluding a settlement after an agreement in principle to settle. *See e.g., Rothfarb v. Hambrecht*, 649 F.Supp. 183 (N.D. Cal.1986); *Cantor v. Detroit Edison Co.*, 86 F.R.D. 752 (E.D.Mich.1980). They also cite two cases in which the courts specifically considered and rejected the application of a sliding scale multiplier that would have taken into account the different levels of the risk inherent in different tasks and the possibility that risk diminished as the case progressed. *See Jorstad v. IDS Realty Trust*, 489 F.Supp. 1180, 1190–91 (D.Minn.1980), *award vacated on other grounds*, 643 F.2d 1305 (8th Cir.1981); *In re Equity Funding Corp. of America Securities Litig.*, 438 F.Supp. 1303, 1336 (C.D.Cal.1977).

Like those courts, we decline to adopt an approach by which a multiplier is revised according to our determination of risk at various phases of the proceeding prior to the entry of a final settlement or judgment. It is well established that risk is to be assessed as of the time of the inception of the litigation. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir.1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976). In making that assessment, the inquiry logically focuses on the overall chances of winning—that is, the likelihood that the attorney would obtain either an agreed settlement or a final judgment on the merits which would entitle the attorney to an award of reasonable fees. An agreement in principle to settle does not entitle an attorney to such an award. In other words, until a settlement or final judgment has been entered by the court, an attorney's right to be paid remains variously at risk—at certain phases of the litigation the chances of securing a final judgment look better than others. Thus, an assessment of the risk at the inception of the litigation would take into account the variability of risk at different stages of the proceeding. We believe that when an attorney agrees to represent a client on a contingency basis, the spectrum of risk and the amount of time and expense required at risky stage are factors that naturally, though perhaps imprecisely, enter into the decision to undertake the litigation. So long as the right to recover for hours and expense is at risk, a contingency multiplier for the risk of losing is justified. Conversely, the point at which contingency for losing is no longer justified is the point in time when the attorney has secured the right to be paid.[5] We cannot conclude in this case that the January 19, 1989 agreement in principle secured that right. Accordingly, we find that a multiplier is warranted for time spent up to the time the parties concluded a final settlement.

## II. *Incentive Award to Class Representatives*

■ Several class representatives have moved this Court for an order allocating a portion of the proposed $10,000,000 settle-

---

5. Allowing a multiplier for the risk of losing, and hence, for losing the right to be paid, is therefore distinguishable from disallowing a multiplier for hours spent on matters that might arise after winning that might place *recovery* of payment at risk. *See Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 107 S.Ct. 3078, 3088–89, 97 L.Ed.2d 585 (1987) ("Whatever counsel thought the risk of losing was at the outset, it is doubtful that counsel anticipated a similar risk in enforcing a decree if plaintiff was successful in having one entered.").

ment fund as an incentive award for having undertaken the burden and responsibility of litigating this class action suit.[6] We shall treat these motions as objections to the settlement.

These plaintiffs, acting as named plaintiffs, claim they regularly conferred with the lead plaintiffs' counsel in formulating litigation strategy and fact analysis and participated in discovery by answering interrogatories, responding to document production and sitting for their respective depositions. As a result of their efforts, they claim that they helped achieve a proposed settlement of $10,000,000. For the following reasons, however, the motion for an incentive award is denied.

By bringing an action as a class action, a named plaintiff disclaims any right to preferred treatment in settlement. *Officers for Justice v. Civil Service Com'n,* 688 F.2d 615, 632 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 508 (5th Cir. 1981). That disclaimer applies even though the named plaintiff undertook extra responsibilities during the litigation. *Officers for Justice,* 688 F.2d at 632. (named plaintiff denied preferred treatment in settlement though he initiated and was personally involved in the litigation and probably had stronger claims than other class members); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1176, *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). (original plaintiffs denied preferred position in settlement though they initiated the action and made the fund available).

Though the Seventh Circuit has not addressed the issue of incentive fees directly, it has indicated that disparate treatment in the form of favoritism to named plaintiffs is a sign that the settlement is unfair. *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 890 (7th Cir.1985), *cert. denied,* 478 U.S. 1004, 106 S.Ct. 3293, 92 L.Ed.2d 709 (1986). Significantly, in *E.E. O.C.,* the Seventh Circuit upheld the district court's approval of a consent decree which gave the charging parties, who had allegedly suffered more damages, less relief than the class as a whole even though the charging parties objected to the district court's award. *E.E.O.C.,* 768 F.2d at 892.

Because the plaintiffs chose to be treated as class members, we deny any preferred treatment through an incentive award. To decide otherwise borders on permitting a lay plaintiff to share in the attorneys' fees. The real danger is a potentially undesirable precedent where every named plaintiff would expect a "fee" or "bounty" for the use of his or her name to create a class action. It is not difficult to envision a scenario, certainly not in this case and with these lawyers, of prospective named plaintiffs becoming involved in a bidding war (with the ante spiralling upward for their "services") with prospective class counsel.

### Conclusion

Class counsel are awarded fees in substantial part, and all expenses are awarded. In making this award, we have allowed all hours claimed by the firms with two exceptions. We reduce the number of hours claimed by Stull, Stull & Brody by 8.50 hours. We further withhold any finding regarding the hours claimed by Robert D. Allison and his associate Mark Singer because of a discrepancy in their fee affidavits. We order Allison to submit his timesheets and those of his associate to the Court within 7 days, along with an explanation for the discrepancy. We allow the hourly rates requested by lead counsel and Illinois counsel Robert D. Allison and Much, Shelist, Freed, Denenberg, Amant & Eiger, P.C. We have adjusted the requested rates of the non-lead New York firms to bring them in line with the highest rates we have awarded to lead counsel in Illinois or other Illinois counsel.

We also approve a multiplier of 1.75 to be applied to lead counsels' lodestar figures, and we approve a multiplier of 1.25 to be applied to non-lead counsels' lodestar figures. We have rejected the objection of the defendants that the application of the multiplier should be restricted to fees incurred prior to the January 19, 1989 agree-

---

**6.** Plaintiff Alan Khan seeks an additional $5,000. Plaintiffs Robert Clothier, Warren E. Esanu, Jack Fishbaum and William Steiner seek an additional total of $8,000.

ment in principle to settle. In making this final award, we have subtracted the amount of fees partially awarded in our August 30, 1989 order. We have recorded all of these adjustments in the Appendix to this opinion.

Based on these findings, we make the following final award of fees and expenses to the following attorneys:

| Firm | Final Award (Fees + Expenses) |
|---|---|
| Sachnoff & Weaver, Ltd. | $272,674.98 |
| Berger & Montague, P.C. | 211,412.62 |
| Wolf, Haldenstein, Adler, Freeman & Herz | 36,679.00 |

| Firm | Final Award (Fees + Expenses) |
|---|---|
| Wolf, Popper, Ross, Wolf & Jones | $ 60,600.04 |
| Kaufman, Malchman, Kaufman & Kirby | 31,655.54 |
| Stull, Stull & Brody | 102,388.11 |
| Joseph Weiss | 7,148.44 |
| Richard Appleby | 12,648.25 |
| Much, Shelist, Freed, Denenberg, Ament & Eiger | 6,007.96 |
| Abbey & Ellis | 32,684.80 |
| Robert D. Allison | (pending) |

Finally, we deny any additional "incentive" award for the named plaintiffs above and beyond the amount to which they are entitled as class members. It is so ordered.

## APPENDIX

| FIRM | LODESTAR | MULTI-PLIER | TOTAL FEE AWARD | PARTIAL FEE AWARD | FEE AWARD 11/13/89 | EX-PENSES | TOTAL FEE & EX-PENSES 11/13/89 |
|---|---|---|---|---|---|---|---|
| Sachnoff & Weaver, Ltd. | $598,756.25 | 1.75 | $1,047,823.40 | $850,000.00 | $197,823.40 | $74,851.58 | $272,674.98 |
| Berger & Montague, P.C. | 225,925.00 | 1.75 | 395,368.75 | 225,000.00 | 170,368.75 | 41,043.87 | 211,412.62 |
| Wolf, Haldenstein, Adler, Freeman & Herz | 73,712.00 | 1.25 | 92,140.00 | 63,000.00 | 29,140.00 | 7,539.00 | 36,679.00 |
| Wolf, Popper, Ross, Wolf & Jones | 90,896.70 | 1.25 | 113,620.87 | 60,000.00 | 53,620.87 | 6,979.17 | 60,600.04 |
| Kaufman, Malchman, Kaufman & Kirby | 49,725.00 | 1.25 | 62,156.25 | 38,000.00 | 24,156.25 | 7,499.29 | 31,655.54 |
| Stull, Stull & Brady | 127,935.00 | 1.25 | 159,918.75 | 66,000.00 | 93,918.75 | 8,469.36 | 102,388.11 |
| Joseph Weiss | 31,838.75 | 1.25 | 39,798.44 | 33,000.00 | 6,798.44 | 350.00 | 7,148.44 |
| Richard Appleby | 23,485.00 | 1.25 | 29,356.25 | 18,000.00 | 11,356.25 | 1,292.00 | 12,648.25 |
| Much, Shelist, Freed, Denenberg, Ament & Eiger | 10,320.00 | 1.25 | 12,900.00 | 9,000.00 | 3,900.00 | 2,107.96 | 6,007.96 |
| Abbey & Ellis | 38,392.50 | 1.25 | 47,990.63 | 26,000.00 | 21,990.63 | 10,694.17 | 32,684.80 |
| Robert D. Allison | (pending) | 1.25 | (pending) | 40,000.00 | (pending) | 3,345.91 | (pending) |

## ADJUSTED LODESTAR RATES

### 1. Wolf, Haldenstein, Adler, Freeman & Herz

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Daniel Krasner | 285 | 45.9 | $13,081.50 |
| Fred Isquith | 220 | 4.3 | 946.00 |
| Jeffrey Smith | 220 | 55.9 | 12,298.00 |
| David Brown | 150 | 187.3 | 28,095.00 |
| Peter Harrar | 150 | 32.6 | 4,890.00 |
| Michael Jaffee | 110 | 85.9 | 9,449.00 |
| **Law Clerk** | | | |
| Robin Klein | 85 | 2.5 | 212.50 |
| **Paralegals** | | | |
| Jackie Cottrell | 60 | 5.2 | 312.00 |
| E. David Sosa | 60 | 7.9 | 474.00 |
| Sara Nomnama | 60 | .8 | 48.00 |
| Michael Re | 60 | 10.4 | 624.00 |
| David Kittredge | 60 | 20.5 | 1,230.00 |
| Sara Lesch | 60 | 26.1 | 1,566.00 |
| Alan Cooke | 60 | 1.1 | 66.00 |
| Lawrence Boes | 60 | 7.0 | 420.00 |
| | | | $73,712.00 |

## 2. Wolf, Popper, Ross, Wolf & Jones

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Stanley Nemser | 285 | 4.5 | $1,282.50 |
| Philip Jones | 285 | 8.75 | 2,493.75 |
| Stephen D. Oestreich | 285 | .67 | 190.95 |
| Robert M. Kornreich | 285 | 86.40 | 24,624.00 |
| Robert C. Finkel | 150 | 2.58 | 387.00 |
| Sheila Chervin | 150 | 1.00 | 150.00 |
| Roy L. Jacobs | 150 | 67.25 | 10,087.50 |
| Mark Levine | 150 | 151.25 | 22,687.50 |
| John Halebian | 150 | 60.30 | 9,045.00 |
| Chet F. Waldman | 150 | 61.75 | 9,262.50 |
| Lawrence D. Levit | 150 | 69.70 | 10,455.00 |
| **Paralegals** | | | |
| Shireen Skeeter | 75 | 1.00 | 75.00 |
| Taras A. Sawchuk | 75 | 2.08 | 156.00 |
| | | | $90,896.70 |

## 3. Kaufman, Malchman, Kaufman & Kirby

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Stanley L. Kaufman | 285 | 91.50 | $26,077.50 |
| Irving Malchman | 285 | 12.50 | 3,562.50 |
| Catherine E. Welker | 150 | 129.50 | 19,425.00 |
| Lorna N. Graham | 150 | .50 | 75.00 |
| **Paralegal** | 65 | 9.00 | |
| — — — | | | |
| | | | $49,725.00 |

## 4. Stull, Stull & Brody

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Jules Brody | 285 | 199.25 | $56,786.25 |
| Robert A. Stull | 285 | 89.25 | 25,436.25 |
| Mark Levine | 150 | 24.75 | 3,712.50 |
| Howard T. Longman | 150 | 105.50 | 15,825.00 |
| Brian Barry | 150 | * 87.00 | 13,050.00 |
| **Paralegal** | | | |
| Michael Morgan | 75 | 175.00 | 13,125.00 |
| | | | $127,935.00 |

\* Representing a reduction of 8.50 hours.

## 5. Joseph Weiss

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Joseph Weiss | 285 | 99.75 | $28,428.75 |
| Bert Hidary | 110 | 31.00 | 3,410.00 |
| | | | $31,838.75 |

## 6. Richard Appleby

| Lawyer | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Richard Appleby | 220 | 106.75 | $23,485.00 |
| | | | $23,485.00 |

7. Abbey & Ellis

| Lawyers | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Arthur N. Abbey | 285 | 38.00 | $10,830.00 |
| Ralph L. Ellis | 285 | 20.00 | 5,700.00 |
| Mark C. Grady | 150 | 144.00 | 21,600.00 |
| Paralegal | | | |
| Emily Komlossy | 75 | 3.50 | 262.50 |
| | | | $38,392.50 |