**In re SECURITY AMERICA CORPORATION SECURITIES LITIGATION.**

No. 81 C 3910.

United States District Court,
N.D. Illinois, E.D.

Nov. 13, 1990.

James E. O'Halloran, Clifford G. Kosoff, O'Halloran, Kosoff & Miller, P.C., Northbrook, Ill., for plaintiff class.

Allan K. Peckel, Marian Rosner, Wolf, Popper, Ross, Wolf & Jones, New York City, Stuart D. Perlman, Chicago, Ill., Richard Meyer, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, Roger Fendrich, Arnold & Porter, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

ALEISA, District Judge.

The plaintiff class' attorneys' motion for the award of final counsel fees and expenses is before the court. Before addressing the merits of the motion, the court will provide a brief summary of the history of this litigation and the related litigation in the Illinois state courts.

### I. FACTS

This class action arose out of a public offering of stock of Security America Corporation ("Security America") in 1980. Security Mutual Casualty Company ("Security Mutual"), an Illinois mutual insurance company, was notified in 1980 by the Illinois Department of Insurance that it must increase its capital prior to the end of the year. Security Mutual planned to demutualize and convert to stock ownership in order to meet the increased capital requirement. Accordingly, Security Mutual changed its name to Security Casualty Company ("Security Casualty") and formed a holding company called Security America Corporation ("Security America") to acquire all of the stock of Security Casualty. The public offering resulted in the sale of approximately 2.75 million shares of stock at a price of $6.00 per share and the realization of 16.5 million dollars. The net proceeds of the offering were approximately 14.2 million dollars, which Security America transferred to Security Casualty in exchange for all of the shares of Security Casualty.

Apparently, the infusion of capital resulting from the public offering was too little, too late. The Director of the Illinois Department of Insurance ("Director") filed a complaint in the Circuit Court of Cook County alleging that Security Casualty was insolvent and seeking the company's liquidation or rehabilitation. Security Casualty

voluntarily agreed to rehabilitation proceedings and the Director was appointed as rehabilitator of the company. Subsequently, the Director filed an amended complaint which sought a declaration of insolvency and an order of liquidation. The Circuit Court entered an order finding insolvency and directing liquidation in December of 1981. The order also set a deadline of July 31, 1982 for the submission of claims against Security Casualty.

In the meantime, also in 1981, four separate lawsuits were filed in this court by shareholders against Security America, its subsidiary Security America Casualty Company, Security America officers and directors, and the accountants and underwriters for the 1980 offering. Those lawsuits were consolidated in this action and Judge Getzendanner certified the plaintiff class. F.R.Civ.P. 23. The complaint in this action alleged that the public offering registration statement and prospectus contained materially false and misleading information about the business and financial condition of Security America. The plaintiff class and the accountants, Coopers & Lybrand, entered into a settlement agreement, which Judge Getzendanner approved in 1984 and, at the same time, awarded interim attorneys' fees in the amount of $939,291.80 and expenses in the amount of $225,000.00. The plaintiff class also achieved a settlement with some of the underwriter and director defendants, which was approved in July of 1986, along with an interim award of attorneys' fees in the amount of $401,410.40 and expenses in the amount of $37,724.87. In the same July 15, 1986 order, Judge Getzendanner granted plaintiffs' motion for summary judgment against Security Casualty and Security America in the amount of $15,184,950.66.

The class then filed suit in the Circuit Court of Cook County and sought the imposition of a constructive trust on the stock offering proceeds in the possession of the Liquidator of Security Casualty, in the amount of the judgment entered in this action. The Circuit Court granted the plaintiffs' petition in February of 1988 and entered judgment in the amount of $7,799,950.66 ($15,184,950.66 offset by the settlements). The Liquidator and the guaranty funds appealed the decision directly to the Illinois Supreme Court, which reversed the decision of the Circuit Court and held that the Illinois Insurance Code distribution statute determined the appropriate distribution of funds. *In re the Matter of the Liquidation of Security Casualty Company*, 127 Ill.2d 434, 130 Ill.Dec. 446, 537 N.E.2d 775 (1989). The plaintiff class' claim was a "category 6" claim under the statute.[1] The attorneys for the plaintiff class inform the court that there will be no recovery of funds by the class from the liquidator because there are so many claims with priority ahead of the class. Therefore, the attorneys' fees from July of 1986 until now were incurred in unsuccessfully pursuing funds for the class in the state court proceedings.

The plaintiff class' attorneys' current petition for fees requests $376,644.25 in fees, $12,020.22 for expenses and a multiplier of 1.25 or 25% to be applied against all of the attorneys' fees, which would result in an additional award of $429,336.62, for a current award of approximately $825,000.00.

## II. DISCUSSION

### A. *State Court Litigation Attorneys' Fees*

The court's review of the plaintiff class' attorneys' petition for fees incurred in the state court litigation resulted in an order entered on September 27, 1990, which directed the plaintiff class' counsel to submit a supplemental memorandum of law ("Supplemental Memorandum") addressing the issue of "[w]hat, if any, precedent exists which would support this court's award of attorneys' fees and expenses incurred in litigation in state court and which did not

---

1. The plaintiff class' memorandum in support of final distribution indicates that the Illinois Supreme Court decision resulted in the plaintiff class' claim being relegated to a category 7 claim, while the memorandum in support of application for final counsel fees indicates the claim was a category 6 claim. It is not material to the issues before the court, so for purposes of the application the court accepts the representation that the claim was a category 6 claim.

result in any recovery for the plaintiff class." Counsel's supplemental memorandum argues that a fee award for the state court litigation is justified for two reasons. First, counsel claim that the settlement that the class reached with Coopers & Lybrand was conditioned on the class' pursuit of claims in the state court liquidation proceedings and therefore, the court must consider the 5 million dollar settlement achieved with Coopers & Lybrand as a benefit to the class resulting from the state court litigation. Second, counsel argue that because Judge Getzendanner "instructed" counsel to enforce the judgment entered in this action in the state court and because of the overall benefit achieved on behalf of the class, equitable principles require the award of the attorneys' fees.

Alternatively, counsel argue that if the court denies the request for fees and expenses in the state court litigation, then the court should allow counsel to amend the fee petition to request a multiplier of 1.6, rather than the multiplier of 1.25 originally requested. Counsel state that a multiplier of 1.6 "is well within the range of those sanctioned by other courts." (Supplemental Memorandum, p. 13) The court is asked to apply the amended multiplier even though counsel previously acknowledged, before the court raised the issue of compensation for fees incurred in the unsuccessful state court litigation, that the Seventh Circuit does not follow the "percentage of the fund" approach to class action attorneys' fee awards. (Memorandum in Support of Application of Attorneys, pp. 6–7) Conveniently, if the class' attorneys were awarded the amounts requested in the original petition, the total amount recovered for attorneys' fees would be $2,146,683.07, whereas, in the event the court denied the state court fees, but applied the new multiplier, the total award would be $2,145,123.50. The difference between the amount requested in the petition and the amount requested in the proposed amended petition is approximately $1,500.00. Yet, counsel informs the court that "[they are] not attempting to engage in a numbers game." (Supplemental Memorandum, p. 14) The court summarily rejects counsel's alternative request. Accordingly, only the first two arguments set forth above will be addressed.

### 1. The Court's Order

■ The plaintiff class' attorneys claim that Judge Getzendanner's July 15, 1986 final order pursuant to Rule 54(b), which dismissed this action with prejudice, ordered the plaintiff class to pursue the enforcement of the judgment in the liquidation proceedings. The following language is relied upon from the order: "It is understood the Plaintiff Class shall proceed in the liquidation proceedings" ... (July 15, 1986 Order, ¶ 8, p. 3) [2] Not only is that language not mandatory, but also counsel's claim in this regard strains the imagination. Counsel offers no explanation or support for Judge Getzendanner's alleged interest in the plaintiff class' enforcement of a judgment in a different forum. Litigants may or may not seek to enforce judgments for a variety of reasons, not the least of which is that fairly often judgments are uncollectible, but that determination is not normally the result of a court order. The court is not persuaded that this case is different from any other case in that regard. Moreover, it appears from counsel's billing records that counsel presented a draft order to Judge Getzendanner, which counsel does not indicate was revised by the court. Accordingly, the court rejects counsel's argument that the attorneys' fees incurred in the liquidation proceedings are compensable because Judge Getzendanner "ordered" plaintiffs to participate in that litigation. The class' attorneys' related "equitable" argument, that the overall benefit to the class justifies the award of fees for the state court litigation, is addressed below.

---

**2.** While this language did not *require* the class to seek enforcement of the judgment in the state court, it did manifest the court's intention to retain jurisdiction of the action pending the outcome of the state court proceedings. *See e.g. Brady v. Sullivan,* 893 F.2d 872, 875 (7th Cir. 1989).

## 2. Coopers & Lybrand Settlement

Counsel's next argument is that the Coopers & Lybrand settlement agreement obligated plaintiffs to proceed in the liquidation proceedings and therefore, the settlement achieved with Coopers & Lybrand should be considered by the court as a benefit resulting from the plaintiff class' participation in those proceedings. Counsel cites the following provision of the Coopers & Lybrand settlement agreement in support of this argument:

At such time as the court determines, in a Final order or Final judgment, that any and all proceedings pertaining to this litigation and all Actions–Over and Related Actions have terminated, whether by judgment, Court-approved or otherwise, and that all existing and potential obligations of Plaintiffs and the Class under Section 8 and 10(a) hereof have been satisfied, all sums remaining in escrow hereunder shall be distributed to the Plaintiffs and the Class as directed by a Final order of the court, after payment from such escrowed funds of all attorneys fees and expenses and all other expenses incurred by the Plaintiffs and the Classes they represent, and all expenses incurred by Coopers & Lybrand, in connection with such litigations and satisfaction of such obligations under Section 10 hereof. Payment of all fees and expenses to Plaintiffs' attorneys and accountants, whether for services rendered directly for the benefit of the Class or with respect to claims against Coopers & Lybrand, shall be made only after Court approval. (Settlement Agreement, ¶ 11(b), pp. 23–24)

"Related Actions" are defined as including the liquidation proceedings in the Circuit Court of Cook County in paragraph 1(c) of the settlement agreement. Counsel also filed the affidavit of Roger P. Fendrich, an attorney who participated in the representation of Coopers & Lybrand in this action, which provides that:

The Plaintiff Class' agreement to pursue the constructive trust theory in the Liquidation Proceedings and Coopers & Lybrand's concommitant (sic) right to share in any recovery were material considera-

tions in Coopers & Lybrand's final decision to pay $5,000,000 pursuant to the Settlement Agreement. (Fendrich Affidavit, ¶ 5, p. 3)

The court is troubled, however, that this argument is too tenuous to weigh heavily in the court's consideration.

Counsel is aware of the court's concern that the liquidation litigation attorneys' fees of approximately $375,000.00 resulted in no benefit to the class. This argument, attributing the Coopers & Lybrand settlement to the class' agreement to pursue the state court litigation and the argument that Judge Getzendanner ordered the plaintiffs to pursue their claim in the liquidation proceedings appear to be nothing more than simple attempts to justify fruitless litigation. The reference to "related actions" in the Coopers & Lybrand settlement agreement appears to be no more than an item in a list of all potential actions in which Coopers & Lybrand might incur expense.

Moreover, while the court does not doubt the accuracy of Mr. Fendrich's affidavit, at most the affidavit demonstrates that Coopers & Lybrand hoped the class would achieve some recovery in the state court litigation. Also, class' counsel were previously awarded attorneys' fees in an amount just under $1,000,000.00 for the period during which the settlement agreement was negotiated. Finally, the prospect of settlement agreements which include as a condition the pursuit of litigation in another forum and the "equitable" award of attorneys' fees in the original forum, whether the other litigation is successful or not, raises a whole host of issues. The class' attorneys' failure to address any of those issues is not unlike their neglect to inform the court in their initial memorandum that no precedent exists for a federal court's award of attorneys' fees for state court litigation.

Although counsel admit that no precedent exists in which an award of fees was made under the circumstances presented here, they argue that *In re THC Financial Corp. Litigation,* 86 F.R.D. 721 (D.Haw. 1980), supports such an award. Counsel

point to the award in that case for class' counsel's participation in bankruptcy proceedings in the same district. Counsel cite a portion of that opinion, which discusses generally the principles applied in determining the lodestar, and state that the discussion was part of the court's holding that the bankruptcy proceeding fees were compensable. (Supplemental Memorandum, pp. 9–10, *citing In re THC Financial Corp. Litigation*, 86 F.R.D. at 739.) The actual discussion of the award of bankruptcy fees, however, appears much later in the opinion. *In re THC Financial Corporation Litigation*, 86 F.R.D. at 743. Moreover, counsel's citation to this case ignores the discussion in the opinion of the disallowance of fees for related class action litigation pending in the Hawaii state court. *Id.* at 744.[3] The opinion is more supportive of the denial of fees under the circumstances of this case than an award of fees.

3. Ramifications of Awarding Fees for Litigation Conducted in a Different Forum

The failure of counsel to cite persuasive authority for the court's award of state court fees does not end the discussion. The Seventh Circuit follows what is described as the "lodestar approach" to the award of attorneys' fees in common fund cases. *Skelton v. General Motors Corporation*, 860 F.2d 250, 253 (7th Cir.1988), cert. denied, —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). As acknowledged by the plaintiff class' attorneys, that method requires the court to multiply "the number of hours it deems reasonably to have been spent by the plaintiffs' counsel by an hourly rate the court determines to be reasonable for similarly complex non-contingent work." (Memorandum in Support of Application of Attorneys, p. 5); *accord Purdy v.*

*Security Savings & Loan Association*, 727 F.Supp. 1266, 1269 (E.D.Wisc.1989). "The party seeking attorney fees 'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Id., citing Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Unfortunately, the plaintiff class' attorneys neglected to advise the court of any principled method by which this court may evaluate the propriety of hours billed in the state court litigation, which addressed issues totally unrelated to the issues raised in this action. Also, the attorneys simply state that this court, when the case was assigned to Judge Getzendanner, previously awarded the same hourly rates currently requested. (Memorandum in Support of Application of Attorneys, p. 8) Apparently, the attorneys do not consider the plain fact that the previously awarded hourly rates were for securities fraud litigation conducted in federal court, rather than "constructive trust litigation" conducted in state court, to be material to the court's calculations of reasonable hourly rates. The attorneys' failure to address these basic issues belies their claimed expertise.

The court has already directed the attorneys by three separate minute orders to supplement the billing records and attorney resumes for their fee petition, which were incomplete as originally filed in March of this year. (Minute Orders of 6/26/90 and 7/2/90, Docket p. 27, Doc. Nos. 379–381) The class' attorneys' initial memorandum in support of their application was not filed until June of this year, because the attorneys requested and received an extension of time.[4] Subsequently, the court directed the attorneys, by yet another minute order, to address the state court litigation fees issue outlined above. (Minute Order of

---

3. The court finds equally unpersuasive counsel's citation to cases standing for the proposition that counsel need not be successful on every theory of recovery alleged in an action to be compensated for their efforts. The court discerns a large difference between the award of fees by a federal court for actions which are partially successful in the federal forum and actions which are entirely unsuccessful in a state forum.

4. Not only was the memorandum filed only after the attorneys received an extension, but also the memorandum was 16 pages long, in violation of Local Rule 9. Of course, the memorandum also had margins of less than one inch, which violates the spirit of the local rule, if not the letter.

9/27/90) The supplemental memorandum fails to address even the simple mechanics of an award of counsel's requested fees. Thus, some seven months after the attorneys' petition for fees was filed, the court is still encountering fundamental issues the attorneys failed to address.

The court is mindful that it "is incumbent upon the trial court to become the fiduciary for the fund's beneficiaries and to act with 'moderation and a jealous regard to the rights of those who are interested in the fund' in determining what is a reasonable fee to be paid to class counsel for their efforts" ... *Purdy*, 727 F.Supp. at 1269, *citing Skelton*, 860 F.2d at 253. Counsel bears the burden of demonstrating their entitlement to fees. Counsel have simply failed to meet their burden with regard to the state court fees. Accordingly, counsel's petition for state court fees and expenses is denied.

B. *Fees Incurred in Federal Court Litigation Following the July 15, 1986 Fee Award*

Judge Getzendanner's July 15, 1986 order, which awarded the plaintiff class' attorneys fees in the amount of $939,291.80, only addressed fees billed prior to July 1, 1986. It is apparent from the time records submitted by the attorneys in support of their current application that there were some billing entries for work performed in the federal court litigation which were incurred on or after July 1, 1986.[5] Therefore, the court awards fees in the following amounts to the following firms:

1. Milberg Weiss Bershad Specthrie & Lerach: Total award, including fees and expenses, in the amount of $11,408.78.

   a. Melvyn Weiss:
   12/11/89 entry for .50 hours for a total of $237.50.

   b. David Bershad:
   7/21/86 entry for .50 hours for a total of $117.50.

   c. Richard Meyer:
   All entries from 7/1/86 through 7/30/86 for a total of $4,418.00. Also, all entries from 5/1/89 through 6/11/90, except entries for preparation of fee application, for a total of $6,093.75.
   Expenses, with the exception of word processing, incurred from 7/1/86 until 7/31/86 are awarded, for a total of $501.36. Also, expenses from 9/5/89 until 4/18/90, to the extent the subject matter of the expense is identified, are awarded, for a total of $40.67.

2. Wolf Popper Ross Wolf & Jones: Total award, including fees and expenses, in the amount of $2,826.77.

   a. Christopher Dunleavy:
   All entries from 4/24/89 through 5/2/89, for a total of $837.25.

   b. Jeffrey Squire:
   All entries from 11/9/89 through 1/30/90, for a total of $1,920.00.
   Expenses, from 7/31/89 through 2/5/90, in the amount of $69.52.

3. Allan Peckel: Total award in the amount of $75.00, for the 5/30/89 entry.[6]

4. Stuart Perlman:
   All entries from 5/11/89 until 6/23/89, for a total of $240.00.
   No items of expense shall be allowed, as it appears all items were incurred in connection with the state court litigation.

5. O'Halloran, Kosoff & Miller, P.C.: Total award in the amount of $33,362.22, including fees and expenses.

   a. Neal Geitner:
   All entries from 7/1/86 through 7/11/86, for a total of $1,980.00.

   b. James O'Halloran:

---

**5.** The allowed billing entries primarily are entries either billed in the month following Judge Getzendanner's July 15, 1986 order or during the months just preceding the assignment of this case to this court's docket for the decisions relating to final distribution of the settlement funds, but after the Illinois Supreme Court's March, 1989 decision. The court awards the same hourly rates for the 1986 billings currently being awarded as were awarded by Judge Getzendanner. The 1990 billings awarded reflect the current rates of the attorneys.

**6.** No items of expense were requested by Mr. Peckel.

All entries from 7/1/86 through 7/22/86, with the exception of 7/17/86, for the amount of $7,020.00. Also, the entry on 8/15/86 and all entries from 11/1/89 through 3/23/90 are allowed, for the amount of $6,750.00.

c. Clifford Kosoff:

Entries from 7/11/86 through 7/14/86, for the amount of $2,160.00. Also, all entries from 1/15/90 through 3/20/90, for the amount of $12,560.00.

d. David Belofsky:

Entries from 8/13/86 through 8/15/86, for the amount of $480.00. Also, the entry on 2/19/90 for the amount of $100.00.

e. John Demaret:

Entries from 7/14/86 through 7/16/86 for the amount of $1,380.00.

f. Patricia Heeney:

Entry from 7/16/86 in the amount of $120.00.

g. John Hennessey:

Entry on 9/8/86 in the amount of $375.00.

Expense items from 6/24/86 through 7/28/86 in the amount of $243.84 are allowed. Also, expense items from 5/3/89 through 2/28/90 in the amount of $193.38.

Therefore, the total amount of fees allowed is $46,864.00 and the total amount of expenses is $1,048.77.

## C. *Multiplier*

██ Counsel also requests a multiplier of 1.25.[7] Counsel claim the multiplier is appropriate because of the high degree of risk associated with the class' claims and because a 1.25 multiplier is well within the range of multipliers sanctioned by other courts. (Memorandum in Support of Fee Application, pp. 10–14) The risk associated with the claims at the time counsel agreed to represent the class resulted from the following:

1. Security Casualty was in rehabilitation with the very real possibility (which immediately came to pass) that the rehabilitation proceedings would become liquidation proceedings.

2. Joseph Muir & Co. ("Muir"), the lead underwriter of the Security America public issue, was under serious attack by the Securities Exchange Commission with the very real possibility that Muir itself would be placed in liquidation. This liquidation also came to pass shortly after the lawsuit was filed.

3. Neither Security America nor Security Casualty had directors' and officers' liability insurance and, as was evident from the Security America Prospectus, the Directors and Officers of Security America were not highly paid and were unlikely to have substantial assets.

4. Since Muir sold an overwhelming amount of the stock in the public offering, the non-lead underwriters of Security America sold only a very minor percentage of the stock issued.

5. The Illinois Department of Insurance and the Illinois Guaranty Fund were committed to opposing the constructive trust claims of the Plaintiff Class and were unwilling to consider the compromise of such claims. (Memorandum in Support of Application for Attorneys' Fees, p. 11 and Exhibit C, O'Halloran Affidavit)

Counsel also cite the novelty of the legal issue of imposing liability upon the underwriters and accountants where the prospectus contained statements premised on the fraud of the issuer. (*Id.* at p. 12)

The court agrees with counsel that the circumstances of this case at the time counsel accepted the case, merit the application of the 1.25 multiplier. *In re Gould Securities Litigation,* 727 F.Supp. 1201, 1206 (N.D.Ill.1989) (risk should be assessed at outset of litigation). Accordingly, the court awards the attorneys an additional $346,891.55, which results from the applica-

---

**7.** This multiplier would be applied to the $1,340,702.20 in attorneys' fees previously awarded by Judge Getzendanner as well as the current award of fees. This court does not address in any way the propriety of those awards. The court operates under the assumption that the awards were merited and accordingly, only analyzes the issue of whether a multiplier should be awarded.

tion of the 1.25 multiplier to 1,387,556.20, which represents the previously awarded fees in the amount of $1,340,702.20 and the currently awarded fees in the amount of $46,864.00. The fees awarded pursuant to the multiplier bring the total amount of fees awarded in this litigation to $1,734,-457.75, which this court finds to be more than adequate compensation.

### III. CONCLUSION

For the reasons set forth in this opinion, the court denies in part and grants in part the application of attorneys for plaintiff class for the award of final counsel fees and expenses. The application is denied to the extent that it requests fees and expenses incurred in the state court litigation. The allowed fees for the current application, as set forth above, total $46,864.00. Expenses are allowed in the amount of $1,048.77. The application is also granted to the extent that it requests application of a multiplier of 1.25, for additional fees in the amount of $346,891.55. The total award of fees to be paid as a result of this opinion is $393,755.55 and $1,048.77 in expenses.